UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL A. MADDOX,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 10-cv-01137 (BAH) |
| : | |
| **DISTRICT OF COLUMBIA,** *et al.*, : | |
| : | |
| Defendants. : | |

## JOINT REPORT PURSUANT TO LCvR 16.3

Pursuant to Fed. R. Civ. P. 26(f) and LCvR 16.3, the Plaintiff, Michael A. Maddox, and the District of Columbia, Samuel Modin, and Michael Fanone Defendants (collectively, "District Defendants"), by and through their respective counsel, respectfully submit the following Joint Report.

**I.      Statement of the Case:**

**Plaintiff's Statement:**

On October 8, 2009, the Plaintiff, Michael Maddox, an attorney, was standing on the corner of 5th and K Streets, N.W., in Washington, D.C., looking at a work-related e-mail on his Blackberry when D.C. Metropolitan Police ("MPD") Officers Samuel Modlin and Michael Fanone suddenly and without warning cornered and seized him.

Officer Modlin violently pushed Plaintiff against a fenced refuse dumpster while Officer Fanone blocked Plaintiff's only other method of egress from the location.  After forcing Plaintiff's arms above his head, Officer Fanone asked Plaintiff if he had any weapons or drugs on him and the plaintiff responded, "No."

Officer Modlin then conducted a consent-less, full body search of Plaintiff while Defendant Officer Fanone aided in the search by maintaining an aggressive posture and surveillance exerting control over Plaintiff. Officer Modlin proceeded to pat down Plaintiff's outer clothing, and then reached into Plaintiff's front pants pocket in three, testicle-striking attempts to retrieve the contents therein.

Officer Modlin then took out a money clip from Plaintiff's pocket and asked who the money belonged to, and the Plaintiff responded that it was his. Officer Modlin then forced the money clip into Plaintiff's still-raised right hand, stating "Well, why don't you just hold it then!" Plaintiff then asked Officer Fanone, "Is there a problem officer?" to which Officer Fanone replied, "this is a high-crime area."

After the search, the officers left immediately to back into their vehicle. They had no other discussions with Plaintiff before attempting to leave, and did not apologize or otherwise attempt to explain their egregious conduct. In an effort to document the officers' misconduct, Plaintiff began recording the ensuing events with his Blackberry.

When Officer Fanone noticed that the Plaintiff was recording him, he attempted to cover his face and advanced toward the Plaintiff. During this advance Officer Fanone disingenuously asked Plaintiff, "Is there something I can help you with, sir!?!" in a tone that was meant to be threatening and aggressive.

During this entire event, Plaintiff possessed a reasonable apprehension and fear of an unjustifiably unlawful threat that he would be subjected to an imminent, unwanted application of physical force. Plaintiff continued recording while slowly moving backward in an effort to increase the distance between himself and Officer Fanone, because Plaintiff was uncertain of to what level of escalation Officer Fanone intended to take this armed encounter. While Plaintiff

2

was moving backward from the Officers he said, "No, there's nothing that you can help me with."

Officer Modlin then also began advancing upon Plaintiff's position on the sidewalk. The officers' joint advance on his position once again caused a reasonable apprehension and fear of an unjustifiably unlawful threat that he would be subject to an imminent, unwanted application of physical force. Officer Fanone then came face-to-face with the Plaintiff and told him to "Put the camera away!" Wanting an explanation for the officers' prior conduct, the Plaintiff moved toward the patrol car and asked "Why did you just come over and frisk me?" Officer Modlin then flippantly responded, "It's called citizen's contact." Officer Fanone asked Plaintiff to step back onto the sidewalk, the Plaintiff complied, and the officers proceeded to drive away.

The officers' actions on October 8, 2009 were without either probable cause, articulable suspicion or any other quantum of legally sufficient cause. Throughout the incident, the Officer Defendants failed either to identify themselves, explain what they were doing, display their badges or to otherwise inform Plaintiff of either what they were doing to him or why they were doing it.

Within weeks of the encounter with the Officer Defendants, the Plaintiff filed a complaint with the MPD Office of Police Complaints.  No action was taken other than that the Plaintiff was informed that the MPD Office of Police Complaints had forwarded his complaint to the District of Columbia Attorney General. That office later declined to investigate the matter.

The incident left Plaintiff with substantial emotional scars, has shaken his trust in government and law enforcement, and the egregious violation of his Civil Rights was not properly investigated by these undertrained and undersupervised Officers.

**Statement of the Defendants:**

Defendants dispute that Mr. Maddox is able to prove any claim he has asserted pursuant to 42 U.S.C. § 1983 for violation of their constitutional rights. Specifically, Defendants deny having had any physical contact with Plaintiff or having dome more than engaged him in conversation. Nor was that limited interaction prompted or influenced by Mr. Maddox's race. Thus, Plaintiff's Fourth, Fifth, and Eighth Amendment rights were not violated. The District contends that there was no custom, policy, or practice that caused any alleged constitutional deprivation, nor was the District deliberately indifferent towards an obvious need to properly select, train, supervise and/or discipline the police officers that interacted with the Plaintiff. Moreover, Officers Modin and Fanone assert that they are entitled to qualified immunity from the Plaintiff's constitutional claims against them.

Defendants further contend that Mr. Maddox is unable to prove his common law claims as the officers were entitled, under the circumstances, to engage him as they did.

Defendants deny that the Plaintiff suffered any of the injuries asserted in the complaint.

**II.    Pursuant to LCvR 16.3(c), the parties have discussed the following points and agreed or disagreed as follows:**

**1.    Dispositive motions. Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.**

The parties agree that there is no need to defer discovery as there are no outstanding motions.

**2.	Joinder and Amendment.  The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

At this stage of the case, the Parties are not able to identify factual or legal issues to be agreed upon or narrowed.

The Parties jointly propose all parties be joined or pleadings amended within 60 days of the initial scheduling conference, except that the Parties further propose that in the event of the withdrawal of Plaintiff's counsel the Parties may seek additional time to join parties or amend pleadings.

**3.	Magistrate Judge.  Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

The Parties agree that that this case is not appropriate for assignment to a Magistrate Judge except for purposes of settlement and mediation.

**4.	Settlement. Whether there is a realistic possibility of settling the case.**

There is a possibility of settlement of this case.  The parties will reevaluate the possibility of settlement after commencing discovery.

**5.     Alternative Dispute Resolution.  Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

**Plaintiff's Position:**

There is a possibility of settlement of this case. Plaintiff will reevaluate the possibility of settlement after discovery.

**Defendants' Position:**

The Defendants believe that the Court's ADR procedures may assist the parties in attempting to settle the case, following post-discovery motions, and propose that the Court assign the matter to a magistrate judge for mediation should the Court deny the District Defendants' anticipated summary judgment motions in whole or in part.

**6.     Dispositive motions.  Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

**Plaintiff's Position:**

Summary Judgment filed 30 days after close of discovery, opposition filed 20 days later, and reply to opposition filed another 20 days later.

**Defendants' Position:**

The District Defendants believe that this matter can be resolved in whole or in part by dispositive motions after a reasonable time for discovery.  The District Defendants propose that dispositive motions be filed no later than 60 days following the close of all discovery;

oppositions thereto should be due 30 days thereafter; and replies should be due 15 days after the filing of oppositions.

**7.    Initial disclosures. Whether the Parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), F.R.Civ.P., and if not, what if any changes should be made in the scope, form, or timing of those disclosures.**

**Plaintiff's Position:**

Plaintiff proposes that initial disclosures be filed within 60 days or 90 days if new counsel enters appearance.

**Defendants' Position:**

Defendants propose that initial disclosures be exchanged within 60 days of the entry of a Scheduling Order.

**8.    Discovery.  The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

a.    Fact discovery, including answers to interrogatories, document production, admissions, and depositions:

**Plaintiff's Position:**

Plaintiff seeks for discovery to close on May 6, 2013.  This is based upon the fact that Plaintiff's counsel is seeking to withdraw, in addition to the impending holidays.

**Defendants' Position:**

Defendants request that fact discovery, including answers to interrogatories, document production, admissions, and depositions to be completed within 180 days after the entry of a Scheduling Order.

  b. Number of interrogatories: The Parties agree that Interrogatories should be limited to 30 Interrogatories for Plaintiff and 30 for the District Defendants.

  c. Number of requests for documents: The Parties agree that Interrogatories should be limited to 30 Interrogatories for Plaintiff and 30 for the District Defendants.

  d. Number of requests for admissions:

**Plaintiff's Position:**

Plaintiff proposes that requests for admissions be limited to 75 for Plaintiff and 75 for Defendants.

**Defendants' Position:**

Defendants propose that requests for admissions be limited to 100 for Plaintiffs; 100 for Defendants.

  e. Number of fact depositions:

**Plaintiff's Position:**

Plaintiff seeks 15 fact depositions for each side.

**Defendants' Position:**

Defendants seek 6 fact deposition for each side.

    f. The Parties agree that the duration of each deposition, including deposition of the District of Columbia, pursuant to Fed. R. Civ. P. 30(b)(6) should be limited to seven (7) hours.

Plaintiff may seek a protective order for certain documents such as medical <u>records.</u>

Defendants anticipate that certain information sought by Plaintiffs will be protected from disclosure by the attorney-client privilege, the work product doctrine, and the law enforcement/investigatory privilege. Defendants further anticipate that protective orders will be required for investigative reports, personnel records, certain police department policies and other information covered by privacy laws, and controlling Federal and District Law.

**9. Expert Witnesses. Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2) should be modified, and whether and when depositions of experts should occur.**

The Parties jointly propose that expert witness reports and information should be exchanged and expert discovery should occur as follows:

    a. Plaintiff's Expert Report: 30 days after the close of fact discovery

    b. Defendants' Expert Report: 30 days after the receipt of Plaintiff's expert report

    c. Close of Expert Discovery: 90 days after the close of fact discovery

    **10. Procedures in class actions.**

Not applicable.

**11. Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The Parties agree that discovery should not be bifurcated.

Plaintiff believes the trial should not be bifurcated.

Defendants believe that any decision regarding bifurcation of trial should be made following post-discovery dispositive motions.

**12. Pretrial conference. The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

**Plaintiff's Position:**

Plaintiff proposes that the Pretrial Conference be conducted within 120 days from close of all discovery.

**Defendants' Position:**

The Defendants propose that the pretrial conference be conducted 60 days after post-discovery dispositive motions have been decided.

**13. Trial date. Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

**Plaintiff's Position:**

Plaintiff does not yet want to set a trial date until new counsel enters appearance.

**Defendants' Position:**

Defendants believe the Court should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.

**14.     Other matters. Such other matters that the Parties believe may be appropriate for inclusion in a scheduling order.**

**Plaintiff:**

Plaintiff's counsel will be seeking to withdrawal from this matter shortly after this document. is filed.

**Defendants:**

None.

Respectfully Submitted,

_s/: Musa L. Eubanks_____
Musa L. Eubanks
D.C. Bar No. 461944
2810 64th Avenue
Cheverly, MD 20785
(404) 783-6390

Attorney for Plaintiff  Michael A. Maddox


IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division
441 Fourth Street, NW, Sixth Floor South
Washington, D.C. 20001
(202) 442-9886

        s/: Grace Graham
        GRACE GRAHAM [472878]
        Chief, Equity Section
        Public Interest Division
        441 Fourth Street, NW, Sixth Floor South
        Washington, D.C. 20001
        (202) 442-9886

        s/: Thomas L. Koger
        THOMAS L. KOGER [427921]
        Assistant Attorney General
        Equity Section
        Public Interest Division
        441 Fourth Street, NW, Sixth Floor South
        Washington, D.C. 20001
        Tel: (202) 727-4170
        Fax: (202) 715-7762
        Thomas.Koger@dc.gov

        *Counsel for Defendants District of Columbia,*
        *Samuel Modin, and Michael Fanone*