# *EXHIBIT 3*
# *(Excerpts from Officer Michael Fanone's Deposition)*

# In The Matter Of:

*Maddox v.*
*District of Columbia, et al.*

*Michael Fanone*
*Vol. 1*
*March 22, 2013*



**Feder Reporting Company**
810 Capital Square Place, S.W.
Washington, D.C. 20024
(202) 863-0000
(202) 863-1010 (fax)
feder@federreporting.com

*Original File Maddox-Fanone-03-22-13.txt*
*Min-U-Script® with Word Index*

Page 17

1   A.   Yes, ma'am.
2   Q.   Did that occur?
3   A.   I do not believe so, no.
4   Q.   You say you do not believe so. Is
5   it that it didn't occur or it could have
6   occurred, but you don't remember?
7   A.   **I don't recall Mr. Maddox being**
8   **frisked by either myself or Officer Modlin.**
9   Q.   I want to show you Plaintiff's
10  Exhibit Number 3, which is General Order
11  304.19, the title being Video Recording,
12  Photographing and Audio Recordings of
13  Metropolitan Police Department Members by the
14  Public.
15  A.   (Witness reviewing document.)
16  Q.   Are you familiar with that general
17  order?
18  A.   Yes, ma'am, I am.
19  Q.   Do you recall on October 8, 2009,
20  that at some point during your interaction
21  with Mr. Maddox, he was using his cell phone
22  camera to video record you and Officer Modlin?

Page 18

1   A.   Yes.
2   Q.   And I believe earlier you
3   testified that sometime last week that you did
4   review that video clip. Is that correct?
5   A.   That is correct, ma'am.
6   Q.   Is there anything about
7   Mr. Maddox's action in video recording you and
8   Officer Modlin on October 8, 2009 that you
9   determined to be illegal?
10  A.   No, ma'am.
11  Q.   While Mr. Maddox was recording you
12  and Officer Modlin, did you tell Mr. Maddox to
13  put away his camera?
14  A.   **I don't recall making that**
15  **statement. However, after reviewing the**
16  **video, it would appear that I did, in fact,**
17  **make that statement.**
18  Q.   So, just to be clear for the
19  record, upon your review of the video, you
20  confirm that you, in fact, made that statement
21  to put away the camera to Mr. Maddox?
22  A.   **Based on the videotape, yes,**

Page 19

1   ma'am.
2   Q.   Why? The "why" is why did you
3   tell him to put away the camera?
4   A.   **I don't know.**
5   Q.   My understanding is on October 8,
6   2009, you and Officer Modlin were traveling
7   together in the same police vehicle?
8   A.   Yes, ma'am.
9   Q.   And Officer Modlin was driving?
10  A.   I don't recall.
11  Q.   Up through October 8, 2009, how
12  long preceding that had you and Officer Modlin
13  been working together traveling in the same
14  vehicle?
15  A.   I don't know.
16  Q.   When you say "I don't know," is it
17  because you can't say exactly how long?
18  A.   **I don't recall exactly how long.**
19  **And, to the best of my recollection, my**
20  **partner assignment would vary sometimes weekly**
21  **and other times daily. So I may not be**
22  **assigned to the same partner day after day.**

Page 20

1   Q.   I understand that. So, if we say
2   you and Officer Modlin have been partners
3   intermittently, what is the estimated period
4   that we are talking about?
5   A.   **At that time, to the best of my**
6   **recollection, approximately six months to a**
7   **year.**
8   Q.   What is your current rank?
9   A.   **I am an officer.**
10  Q.   Are you a senior officer to
11  Officer Modlin?
12  A.   **I have more time in the**
13  **department. I don't think Officer Modlin**
14  **would view me as a senior officer, however.**
15  Q.   So I want to refer you back to
16  Plaintiff's Exhibit Number 5, which is your
17  statement to the Office of Police Complaints.
18  A.   Yes, ma'am.
19  Q.   All right. So, I want to focus
20  your attention to the sixth line from the top,
21  and that line begins "Location." Do you see
22  it?